IAN P. FELLERMAN (State Bar No. 119725)
WILEY PRICE & RADULOVICH, LLP
1301 Marina Village Parkway, Suite 310
Alameda, California 94501
Telephone:  (510) 337-2810
Facsimile:  (510) 337-2811

Attorneys for Defendant SAN FRANCISCO
BAY AREA RAPID TRANSIT DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNETTE HART,<br><br>        Plaintiff,<br><br>    v.<br><br>BAY AREA RAPID TRANSIT; and DOES 1-10,<br><br>        Defendants. | Case No.: _____<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION)** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant San Francisco Bay Area Rapid Transit District, erroneously sued as Bay Area Rapid Transit (hereafter "Defendant") hereby removes to this Court the state court action described below.

1.     On November 10, 2015, a Complaint was filed and an action commenced in the Superior Court of California in and for the County of Alameda, entitled *Lynette Hart v. Bay Area Rapid Transit, and Does 1 through 10*, Case No. RG15792784.  A copy of the Complaint is attached hereto as Exhibit A.

2.     The first date upon which Defendant received a copy of the Complaint was December 10, 2015, when Defendant was served with a copy of the state court Summons and Complaint.  A copy of the Summons is attached hereto as Exhibit B.

1

3.      On January 4, 2016, Defendant filed an Answer to the Complaint in the state court action. A copy of the Answer is attached hereto as Exhibit C.

4.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a) because the sixth cause of action in the Complaint asserts a claim for violation of the federal Equal Pay Act, 29 U.S.C. § 206.

Date: January 5, 2016

WILEY PRICE & RADULOVICH, LLP

By: _____

IAN P. FELLERMAN

Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT

2

# EXHIBIT A

SMITH PATTEN
SPENCER F. SMITH, ESQ.  (SBN: 236587)
DOW W. PATTEN, ESQ.  (SBN: 135931)
221 Main St., Suite 740
San Francisco, California 94105
Telephone:  (415) 402-0084
Facsimile:  (415) 520-0104

Attorneys for Plaintiff
LYNETTE HART

FILED BY FAX
ALAMEDA COUNTY

November 10, 2015

CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy

CASE NUMBER:
RG15792784

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| LYNETTE HART, individual<br><br>Plaintiffs,<br><br>v.<br><br>BAY AREA RAPID TRANSIT; and DOES 1-10<br><br>Defendants, | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(1) RETALIATION**<br>Cal. Gov. Code § 12900, *et seq.* (FEHA)<br><br>**(2) FAILURE TO PREVENT HARASSMENT AND RETALIATION IN THE WORKPLACE**<br><br>**(3) GENDER DISCRIMINATION**<br>Cal. Gov. Code § 12900, *et seq.* (FEHA)<br><br>**(4) RACE DISCRIMINATION**<br>Cal. Gov. Code § 12900, *et seq.* (FEHA)<br><br>**(5) RETALIATION**<br>Cal. Lab. Code §1102.5(b)<br><br>**(6) VIOLATION OF THE EQUAL PAY ACT 29 U.S.C. § 206**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff LYNETTE HART files this Complaint and complains of the named Defendants BAY AREA RAPID TRANSIT (BART) and each of them, jointly and severally, and for causes of action, allege as follows.

**EXHIBIT A**

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## GENERAL ALLEGATIONS

1. This Court has jurisdiction over the action as Plaintiff LYNETTE HART ("Plaintiff", "HART") is a resident of the State of California and the acts which form the basis of this action occurred within Alameda County.

2. Venue is proper in this Court as the acts complained of occurred in Alameda County and the Defendant, BAY AREA RAPID TRANSIT ("BART" or "Defendant") is a special transit district under California state law, headquartered in Alameda County.

3. Plaintiff has been damaged in excess of the jurisdictional amount of this court.

## INTRODUCTION

4. This is an action for damages and injunctive relief for the Retaliation in Violation of California Fair Employment and Housing Act ("FEHA"), for Failing to Prevent Harassment and Discrimination in the Workplace, and for Gender and Race Discrimination. This action arises out of events involving Plaintiff HART and her employment at BART.

## THE PARTIES

5. Plaintiff HART is an African-American female currently employed by Defendant BART as a Senior Principal Personnel Analyst.

6. Defendant BART is a special transit district operating under the laws of the State of California, headquartered in Alameda County and the employment records relevant to this matter are administered and maintained in Alameda County, and the unlawful employment practices set forth below occurred in Alameda County.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously names defendants is

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiff's injuries as alleged were proximately caused by such aforementioned defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.     Plaintiff HART has been employed by Defendant for over eight years.  HART commenced working for Defendant on October 27, 2007 as a Personnel Analyst II.

9.     In 2012, HART filed a grievance and internal EEO Complaint against Patricia McElroy ("Ms. McElroy") and others based on the fact that HART was being paid the rate of a Personnel Analyst II despite the fact that she was performing the work of a Senior Personnel Analyst ("SPA").

10.     On October 31, 2012, against the protests of Ms. McElroy and others, the Committee hearing the grievance agreed with HART and recommended HART receive a 5% increase in pay for 50% of the time between March 2009 and January 2012.

11.     The continual pattern of retaliation for this protected activity continues unabated and has resulted in severe, ongoing emotional distress, loss of enjoyment of life, and a lasting impact on her career.

### Salary Irregularities

12.     HART was promoted to the position of SPA after her grievance was settled.  She was offered a salary of $88,500.00 by Ms. McElroy and was told that it was non-negotiable.  At the time of her promotion, there were two other SPAs, Jesse Alcantara and Susanna Ng Lee, who were both earning over $91,000.00.

13.     Based upon BART's long-standing past practice, those salaries should have been averaged with the persons in the existing classifications and within the pay band.  Consequently, HART'S  salary offer should have been the result of a review of persons in the position and a review of the entire pay band, which did not occur.  The close temporal proximity between her

3

protected activity and the setting of her salary as an SPA is proof that her protected activity was the cause of her being paid less for the same work. This particular instance of lower salary is part of an endemic pattern where females and African-Americans within BART are often paid less than their male and non-African-American counterparts based upon manipulation of BART's practices and the procedures for promotions and compensation.

14.    Shortly after HART was promoted, another SPA was hired, Rosalind Bolds ("Ms. Bolds"), at more than $1,000 annual salary more than HART. Ms. Bolds and HART came into the position through the same process. This pay disparity would continue today had Ms. Bolds not left BART. The setting of Ms. Bolds's salary also violates long-standing BART practice of not placing external hire salaries higher than current BART employees.

15.    These irregularities have proceeded unabated, with the most recent instance being the hiring of a male SPA, Felix Mendoza, from outside the district earlier this year, whose salary was set approximately three thousand dollars higher than HART'S salary at $99,079.00 per annum, despite HART'S experience in that position since 2012.

## Manipulation of Hiring Processes

16.    In 2008, Ms. McElroy was selected for the position of Principal Personnel Analyst (PPA). Other interested applicants, including HART, were actively discouraged from applying for the position, which was open only to internal candidates. Susanna Ng Lee ("Ms. Lee"), an SPA, was not even told the job was being posted. It was well known in the department that Elaine Kurtz ("Ms. Kurtz"), HR Manager, would not select anyone other than Ms. McElroy for the position, and that the "posting" of the position was mere window-dressing, as the decision to select Ms. McElroy had already been made.

17.    In or about 2009, HART applied for the position of Senior Government Community Relations Representative, but she was wrongfully denied an interview, and did not obtain the

4

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

promotion. In justifying the denial of an interview to HART, Ms. McElroy falsely claimed that HART did not have Program Administration experience and would therefore be disqualified from the position. Ray Hathorne ("Mr. Hathorne"), reviewed the matter and corrected Ms. McElroy, telling her that HART's experience did qualify her for the position. Ms. McElroy then approached Susanna Ng Lee to validate her refusal of an interview to HART. Ms. Lee asked McElroy whether HART had submitted a supplemental questionnaire, and McElroy misled Ms. Ng Lee, stating that HART had not, while withholding from Ms. Lee the fact that McElroy never informed HART that a supplemental questionnaire was required. Having obtained approval for the denial of the interview to HART by misleading and withholding information from Ms. Lee, McElroy was successful in her attempt to deny an interview to HART. When HART applied again for the position in 2013, McElroy ensured that HART did not get an interview and the position was awarded to Amanda Cruz.

18. In or around November 2010, HART applied for a Senior Personnel Analyst position once again and Ms. McElroy was the recruiter. After competing in the selection process HART was told she would not get the job. The feedback she was given by Ms. McElroy was that HART "would let the managers run all over her". This explanation was the first time in her tenure at BART that someone had made such an assertion about HART's ability to work with managers. No mention of any such deficiency appeared in any of Ms. HART's performance reviews, evaluations, or correspondence, to HART's knowledge.

19. In 2011, Prem Bajaj ("Ms. Bajaj") and Mr. Hathorne were applicants for Principal Personnel Analysts position. Based on HART's prior experience with Ms. Elroy, it was futile for HART to apply. The position again, was only open to internal recruitment. Ms. McElroy was the "recruiter" for the position, and controlled the entire process. Ms. Bajaj received the

5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

promotion; however, a new position was created in Human Resource Information Systems for a PPA. Mr. Hawthorn was eventually the successful applicant for that position.

## FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE FEHA
(Cal. Gov. Code §12940 et. seq.)
### Failure to Promote

20.    In 2013, it became common knowledge at BART that Ms. Bolds was leaving BART to return to her previous employer. Sources within the District confirmed that a PPA position was being created to keep Ms. Bolds at BART. The position was not created/approved in time, so Ms. Bolds did in fact leave the district. The position was eventually approved; however, this time the position was inexplicably opened to external candidates, to ensure that Ms. Bolds was included in the applicant pool. Prior to this time, BART had customarily limited the PPA positions to internal candidates only, and the three prior PPA promotions had been open only to internal applicants. HART complained to BART's Office of Civil Rights several months before the PPA job was posted that this was a violation of BART's policies and procedures to ensure a fair and equitable workplace. When she complained to BART's Office of Civil Rights, HART reasonably believed that the subversion of BART's established workplace practices would result in a violation of laws ensuring a fair and equitable workplace, including the California Fair Employment and Housing Act.

21.    HART applied for the PPA position. Her application was approved and she participated in the process. However, when she appeared for the interview, she was shocked to see Ms. McElroy on the oral interview panel as the hiring manager for the open position. Ms. McElroy should have recused herself from the decision-making process, based upon HART's prior complaints concerning Ms. McElroy, and the fact Ms. McElroy had engaged in prior manipulation of the selection process. The other applicants for the position were Antoinette

6

Conteh and Ms. Bolds. Ms. Bolds was eventually given the position. Ms. McElroy kept an ongoing personal relationship with Ms. Bolds after she left BART, and continued that relationship upon Ms. Bold's return to BART.

22. On March 24, 2014, HART again interviewed for the PPA position. The composition of the interview panel was manipulated or "stacked" with those who would rubber-stamp the pre-selected candidate, and the questions and scoring were done without validation, review, or quality assurance by those who had already pre-selected the candidate. Ms. Bolds was awarded the position on April 28, 2014, for which HART interviewed, and for which she was eminently qualified.

23. As part of the application process, Ms. McElroy scored the writing samples of the applicants by herself, in direct contravention of best practices, which dictated that writing samples be scored by more than one person in order to obtain a more objective view of the sample. Ms. McElroy initially denied having done so, but when questioned by HART about the scoring method, Ms. McElroy refused to tell HART how the practical exam was scored and by whom. It was only with a meeting with Sharon Moore, Office of Civil Rights, that Ms. McElroy admitted to having manipulated the scoring by excluding other persons from participation in the scoring. Again, HART reasonably believed that the subversion of BART's established hiring practices would result in a violation of laws ensuring a fair and equitable workplace, including the California Fair Employment and Housing Act.

24. Ms. McElroy's manipulation of testing and scoring has a long history at BART, and BART has long been on notice of her actions and the retaliatory animus harbored by McElroy against HART for HART's repeated protected activities. For example, in 2009 Ms. McElroy learned that her husband would soon lose his job due to the Nummi Auto Plant closure. In a subversion of BART's workplace fairness policies, Ms. McElroy immediately changed the

7

previous testing tool over the objections of Superintendent Richard Leonard ("Mr. Leonard"). Mr. Leonard voiced his concerns with HART that Ms. McElroy was "dummying down" his exam process. HART was then assigned the recruitment for PT Track Worker #1757.

25.    In contrast, HART has stood firmly against the manipulation of testing and selection procedures at BART and the subversion of the systems designed to ensure compliance with the California Fair Employment and Housing Act, amongst other laws. In this hiring, HART quickly realized that many people from Nummi were applying to the position. At some point, HART mentioned that fact to Mr. Leonard. Mr. Leonard informed HART that Nummi is where Ms. McElroy's husband works.  Mr Leonard said to HART that now it makes sense as to why Ms. McElroy was so adamant that he change a few of his written tests to a second or third grade level exam.

26.    HART went to Ms. McElroy at some point and remarked that a lot of people from Nummi were applying, but they did not meet the minimum qualifications.  HART explained to Ms. McElroy that putting a door on a car all day is not considered heavy labor nor construction experience.  Ms. McElroy then looked up some of the people HART rejected and any individual that was employed at Nummi, Ms. McElroy said they were qualified.

27.    Ms. McElroy also made a point to review the application of a Bruce Williams and explained to HART that he met the qualifications.  HART was adamant that he did not meet minimum qualifications as he was a line man for Cox Cable.  HART explained that Mr. Williams' work, climbing poles, does not qualify as heavy labor nor construction.  After HART went through the application, she told Ms. McElroy that Bruce Williams was her twin sister's husband.  Ms. McElroy stated "you rejected your sister's husband," to which HART responded "yes, he does not meet the MQ's."

8

28.    Right before notices were sent out for the exam for the PT Track Worker #1757 position, Ms. McElroy held a staff meeting and announced that when exam notices are sent out, staff was required to add in language allowing applicants that could not make the exam to call or email to reschedule a new testing date. In all of HART's time working at BART, this was the first time this was done.

29.    One of HART's coworkers stated this could damage the integrity of the testing process but Ms. McElroy said that we have to help our applicants. HART sent her notice out for the exam and within ten minutes, Ms. McElroy's husband called her and said his son was playing in a baseball tournament and he needed to reschedule the exam.

30.    After taking the test on the scheduled accommodation day, HART realized that Ms. McElroy's husband had missed the passing score by one question. Mr. Leonard came to HART's office and he looked at the test and said "ok, he is out". When Ms. McElroy learned that her husband missed a passing score by one question, she told HART that something was wrong with the question he missed.

31.    Clearly forgetting her involvement in changing the test, Ms. McElroy then went back and forth with HART and Mr. Leonard about the question to the point where she made HART do an analysis of how all the applicants answered this particular question. The analysis showed more applicants got the question right then wrong. Ms. McElroy then implored Mr. Leonard and HART to throw the question out. This made HART nervous as she felt Ms. McElroy was being mean and harassing, and was subverting BART's policies that are in place to ensure fairness in hiring, including the FEHA.

32.    HART told Mr. Leonard what was going on and Mr. Leonard then took his concerns to Don Allen ("Mr. Allen"), BART Chief Engineer. Mr. Leonard came back to HART and said after speaking to Mr. Allen he was told if HART threw the question out he was going to then

9

General Manager, Dorothy Duggar, to tell her about this unlawful practice in HR and HART would be in trouble along with Ms. McElroy.

33. Ms. McElroy's husband applied for another recruitment ran by HART. Soon after, Ms. McElroy again changed the test and her husband failed again by two questions. This time Ms. McElroy did not say anything.

### Removal of Job Duties- POST Test

34. After filing her grievance in January of 2012, Ms. McElroy told HART on February 28, 2012, that Rebecca Ygnacio ("Ms. Ygnacio"), a temporary contract employee, would be taking over the Police Department recruitment duties from her. However, according to Ms. Ygnacio's resume, she had no police recruitment and selection experience. Inexplicably, Ms. Ygnacio was instructed by Ms. McElroy not to communicate with HART, and was prohibited from seeking assistance.

35. Ms. Ygnacio was informed when hired that she would be assisting HART, when in reality Ms. McElroy had no intention of permitting Ms. Ygnacio to assist. Ms. Ygnacio could not do the job alone, and sought help from Ms. Hart.

36. Ms. Ygnacio was eventually terminated and replaced by another contractor, Najeebah Spearman, who has been allowed to talk to HART for help in the program.

37. HART informed Ms. McElroy that she was the only HR employee at BART who was authorized to receive the Police Officers Test because she had taken the California Commission on Peace Officers Standards and Training (POST) certified class and was trained to receive the test.

38. Ms. McElroy told HART, over email, to order the exams but said that someone else would be proctoring. HART, however, was the only person authorized to both receive and proctor the test at BART. The POST representative said that HART was the only one authorized

10

to touch the exams and that POST can fine agencies $100,000 per unauthorized person who touches the exams. A POST representative ended up coming from Sacramento to monitor the testing process. This had never happened until HART's responsibilities were taken from her. At one point, four contractors were hired to replace the work that HART performed alone despite the fact HART never had a single complaint about the years of excellent recruiting she performed for the BART Police.

39.     BART's proffered legitimate business reason for these removals of duties are pablum: managers must be able to assign work according to business needs. The foregoing demonstrates that there is no legitimate business reason for removing the one person authorized to administer the test; thereby subjecting BART to sizable fines. The proffered rationale is bogus: the current work costs BART more, subjects BART to increased potential liabilities, and is less effective.

### Retaliation: The Engineer Intern Program

40.     HART created a highly-successful Engineer Intern Program in 2009 and had run the program by herself since its inception. During a performance appraisal meeting with Ms. McElroy in early 2014, another employee, Candis Brown ("Ms. Brown") was told that she would be taking over the program. Ms. Brown was surprised by this decision.

41.     HART was eventually told by Ms. Brown that she was taking over the program, but HART hadn't heard anything from Ms. McElroy on the matter. Four months later, at HART's performance meeting, she asked Ms. McElroy about Ms. Brown taking over the program. Despite Ms. Brown reporting to HART that Ms. McElroy had told her numerous times that she was taking over the program, Ms. McElroy denied having made the decision. Ms. Brown later reported to HART that McElroy yelled at her and reprimanded her for telling HART about the decision.

11

42.    Ms. McElroy informed HART that some new eyes on the program could be beneficial, but gave no details, and expressly disclaimed that HART had done anything wrong with the program. Nevertheless, HART assisted Ms. Brown in creating and operating Ms. Brown's program.

43.    Program Manager Rocio Batarse and Chief Engineer Don Allen were surprised and concerned at Ms. Brown's lack of experience with the program.

44.    HART helped Ms. Brown on all aspects of the program, but specifically on the applicant hiring process and keeping on schedule; however, despite HART's assistance, the program struggled and didn't meet deadlines for the first time.

45.    Ms. McElroy asked HART about what she was doing with the program. HART reminded her that she had given the program to Ms. Brown. Ms. McElroy insinuated that the errors were HART's fault, despite the fact that HART was no longer responsible for running the program. Ms. McElroy then said a meeting would be held the next Monday (it was a Friday) and that HART needed to have a plan to get the program completed regardless of the missteps made by Ms. Brown.

46.    HART was forced to work Friday night and over the weekend, due to the capricious schedule imposed by McElroy. The extreme stress caused by McElroy's retaliatory behavior - taking away HART's program, handing it over to an inexperienced person, then blaming HART for its failure and forcing her on short notice to fix the problem created by Ms. McElroy - took its toll on HART, such that at the end of the 48 hour sprint to resuscitate the internship program, HART suffered a severe distress episode, and had to be taken to a hospital via ambulance.

47.    After the program had selected the candidates, problems again arose. One of the applicants, a Caucasian, had graduated in December 2013, and was not going into a Masters program but had not told anyone and this was not evident on the transcript she had sent.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Program attendees are required to be current students. HART had disqualified a number of individuals previously, but despite being informed of these facts, Ms. McElroy pushed for the applicant and wanted an exception made because she was getting pressure from another manager about this individual. Over HART's objections, Ms. McElroy decided to bring the candidate in despite the fact that she did not meet the qualifications while others were disqualified for the same thing.

48. The applicant, among others, received a reject notice for not meeting the qualifications for the job. Ms. McElroy was aware of this and still rescinded the reject notice and forced HART to hire the disqualified applicant, again in violation of BART's preventive policies and procedures designed to maintain a workplace free of discriminatory animus under the California Fair Employment and Housing Act and other laws.

### Computer Support Position

49. In October, 2013, HART completed the selection process for the Computer Support Assistant position. A California Driver's License ("CDL") was a requirement of the position so HART asked the candidate if she could obtain a CDL, and was told that applicant preferred to take public transit.

50. A CDL was required because there would be times when they had to drive a BART vehicle in order to transport parts, etc. BART's internal policies proscribe employees taking BART parts on BART to another BART location because of liability concerns. HART explained to McElroy that the candidate no longer met the requirements for the job. The hiring manager told her to move to the next applicant

51. HART spoke to Ms. McElroy about the issue. McElroy said that it was appropriate to give the applicant an ADA accommodation. HART explained to Ms. McElroy that it was this

13

person's choice not to drive or possess a CDL, and that the applicant had not requested accommodation, nor demonstrated an impairment of a major life activity.

52.     Ms. McElroy told HART to hire the employee on the condition that she obtain a CDL within six months.  HART engaged in activity protected by the FEHA when she complained to Ms. McElroy that it was her opinion that they were not applying BART policies and procedures designed to establish and maintain a workplace free of discrimination in a consistent and fair manner, as other candidates had been excluded because they did not have a CDL.

### BART District High School and College Interns

53.     HART had successfully coordinated the BART District High School and College Intern program since 2009.  It was HART's job responsibility to work with the nonprofit agencies and school districts conducting outreach to identify eligible students.

54.     In or about April, 2014,  HART discovered by checking the website, that she was no longer in charge of this program.  Ms. McElroy had never mentioned this to her.  The new contact person listed was May Cooper.  Upon information and belief, this removal of HART's job duties was taken in retaliation for HART's protected activities as set forth above.

### Hyper-Criticism and Unwarranted and Excessive Scrutiny

55.     On April 18, 2014, Ms. McElroy told HART that she had received a complaint about HART's voicemail greeting.  Since her hiring at BART in October 2007,  HART had used the same voicemail greeting, and had never had any complaints about it.  HART complied with Ms. McElroy's request and changed her voicemail message despite the fact that Ms. McElroy never provided any reason as to why HART's previous message was no longer acceptable.  Ms. McElroy was also not HART's direct supervisor at the time she gave this instruction.

56.     On another occasion, Ms. McElroy came to HART and accused her of having an inappropriate relationship with one of her male interns.  Ms. McElroy could not give any specific

examples of inappropriate conduct when HART asked. HART was clearly shocked, offended, and emotionally distressed by the wholly unfounded allegation. These are examples of the continuing pattern of retaliatory conduct being visited upon HART by Ms. McElroy.

## Failure to Accommodate Disability

57.    HART suffers from debilitating migraine headaches of which both her past and present supervisors have been aware.

58.    In or around August of 2013, HART developed a migraine during the morning but continued to work the rest of the day and employed measures, such as reducing light and loud noises (these can trigger migraines), in order to continue her work.

59.    Ms. McElroy, then a Human Resource Program Manager, came into HART's office around 3:00 PM and asked HART why she was working with the lights off and her door closed. After HART explained that she was working through a migraine, Ms. McElroy instructed HART to go home until she felt better. HART noticed that throughout the conversation, Ms. McElroy's tone was remarkably stern and elevated, suggesting that she was irritated, upset, and/or angry.

60.    HART informed Ms. McElroy that she has successfully worked through a day with a migraine before and did not want to be forced to use sick leave when she could continue to successfully work. Ms. McElroy instructed her to leave work and utilize sick leave. This event occurred shortly after her successful grievance against Ms. McElroy and Ms. Kurtz. Again, Ms. McElroy was not HART's direct supervisor.

61.    That evening, HART went to urgent care and was diagnosed with stress and anxiety. She was advised by Dr. Chung Kung to take three weeks off of work or to work from home for up to six hours each day. HART provided Ms. McElroy and Ms. Bajaj (her direct supervisor) with the diagnosis and a copy of the doctor's written diagnosis and approval for a reasonable accommodation.

15

62.     Ms. McElroy denied the doctor's recommendation allowing HART to work from home for up to six hours per day and told HART that she would need to use sick leave for the entire time that she was off from work. HART received an email from Jesse Alcantara of BART's employee services department confirming the department's inability to accommodate her.

63.     HART's job functions included reviewing recruitment applications, creating selection processes, and responding to emails and voicemails; all of which could have been done from home. HART has worked from home before, on a need-basis, since 2007. HART had also been approved to work from home around October 2012, after sustaining an injury when she fell at the North Concord BART station, on BART Property, due to slippery floors.

64.     Although BART belatedly accommodated HART's restrictions, and only after an attorney assisted Ms. Hart in enforcing BART's compliance, HART was forced to use sick leave when it was unnecessary.  HART was deemed ineligible to buy back her sick leave time, depriving her of one of the benefits of her employment that she relied upon for providing for her children.

## WHISTLEBLOWER COMPLAINTS
### Complaint About Working Out Of Classification

65.     HART was retaliated against by complaining to her supervisor, Ms. McElroy, and to the Office of Civil Rights (OCR) regarding working out of classification. HART was performing the duties of an SPA prior to being promoted to this position after her successful 2011 grievance.

### Complaint About POST Duties Removed

66.     HART was recruiting for the BART Police Department since she had the qualifications required. This was in the form of being the only person in BART's HR Department that had the capability to give the Police Officers Test. HART had taken and passed the California Commission on Peace Officers Standards and Training ("POST"). HART complained to Ms. McElroy and the OCR in January of 2012. One month later this duty was removed by Ms. McElroy and handed over to a temporary contract employee that did not have a POST certificate.

16

Complaint About Drivers License Requirement

67.     HART was retaliated against after complaining to Ms. McElroy about a Computer Support Assistant Position Plaintiff was recruiting. A recruit submitted their application but did not have a California Drivers License (CDL) as required. Ms. Elroy wanted to hire the applicant even without the CDL and informed HART that it was appropriate and allowed to give the applicant an ADA accommodation. HART explained to Ms. McElroy that it was the applicant's decision to not have a CDL, that the job required transporting parts using BART vehicles, and that it is prohibited for BART employees to take BART parts on BART to another BART location. Ms. McElroy told HART to hire the person in spite of HART's complaints that Ms. McElroy is not applying BART's procedures and policies fairly since other candidates were excluded for not having a CDL.

## FIRST CAUSE OF ACTION
### Cal. Gov. Code § 12900, *et seq.*
## RETALIATION
### (Alleged by Plaintiff against all Defendants)

68.     As a separate and distinct cause of action, Plaintiff complains of Defendants, and each of them, jointly and severally, and for a cause of action alleges:

69.     The factual allegations of Paragraphs 1 through 67 above, are re-alleged and incorporated herein by reference.

70.     Jurisdiction is invoked pursuant to Cal. Gov. Code § 12965, as amended, seeking injunctive relief and damages for violations of the Plaintiff's employment rights as protected by the FEHA, Cal. Gov. Code § 12940, *et seq.*, which prohibits retaliation against an employee for making complaints and protesting or refusing to participate in discriminatory employment practices prohibited by FEHA.

17

71.     Plaintiff is an employee of Defendant BART and DOES 1-10 and is a person protected by the provisions of FEHA as she engaged in the protected activity of complaining about racially discriminatory behavior of her employer, which she reasonably believed violated FEHA.

72.     Defendant BART is an employer, covered by and subject to the FEHA, as it is a special transit district under California state law, headquartered in Alameda County, and has at least five (5) employees.

73.     During her employment, Defendant and DOES 1-10 have subjected Plaintiff to a pattern of egregious retaliatory actions and conduct alleged herein because of her complaints regarding McElroy and others' failure to abide by BART's policies and procedures which are designed to ensure a fair workplace and eliminate unlawful bias and disparate impact based upon protected classes and protected activities under the FEHA.

74.     In doing the acts and engaging in the conduct herein alleged, Defendant intended to and did vex, harass, annoy, and cause Plaintiff to suffer and continue to suffer emotional distress.

75.     As a direct result of said actions and conduct of Defendants, Plaintiff has suffered damages for loss of earnings, loss of future earnings, and related employment benefits and opportunities in an amount to be proven at trial.

76.     At all relevant times, BART and its supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of discrimination against Plaintiff HART based upon her protected activities.

77.     As a direct and proximate result of the willful, knowing, and intentional discrimination against her, Plaintiff has suffered mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

18

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

78. Defendant's acts alleged herein are malicious, oppressive, despicable, and/or in reckless disregard of Plaintiff's rights. As such, punitive damages are warranted against Defendants in order to punish and make an example of their actions.

79. Plaintiff duly filed an administrative charge of discrimination herein with the California Department of Fair Employment and Housing ("DFEH"). The DFEH has issued her Right-to-Sue Notice on April 27, 2015, authorizing Plaintiff to initiate a civil action against Defendant BART, and Plaintiff has exhausted her administrative remedies as to her FEHA claims. WHEREFORE, Plaintiff prays for relief as set forth below:

## SECOND CAUSE OF ACTION
### FAILURE TO TAKE REASONABLE STEPS TO PREVENT HARASSMENT AND RETALIATION FROM OCCURRING (GOVERNMENT CODE § 2940(K)
### (Alleged by Plaintiff against all Defendants)

80. As a second, separate and distinct cause of action, Plaintiff complains of Defendant, and each of them, jointly and severally, and for a cause of action alleges:

81. The factual allegations of Paragraphs 1 through 79 above are re-alleged and incorporated herein by reference.

82. Plaintiff is informed and believes that Defendant failed to take all steps reasonably necessary to prevent harassment and retaliation to Plaintiff from occurring as required by Government Code § 12940(k). Such conduct violated Government Code § 12940(k), and allowed Plaintiff to be harassed and retaliated against, all as set forth above.

83. As a proximate result of said conduct, or lack thereof as set forth above, Plaintiff suffered emotional distress damages in an amount in excess of the minimum jurisdiction of this court and according to proof.

84. As a further proximate result of the said conduct, or lack thereof as set forth above, Plaintiff's lost employment benefits, including employment benefits, including lost wages and hours in an amount in excess of the minimum jurisdiction of the court and according to proof.

19

85. As a further proximate result of the said conduct, or lack thereof as set forth above, Plaintiff was required to and did retain attorneys and are therefore entitled to an award of attorney's fees according to proof.

86. The conduct set forth above, including the harassment and retaliation constitutes oppression, fraud, and malice thereby entitling Plaintiff to an award of punitive damages. Plaintiff is informed and believes, and thereon alleges that the Defendant had advanced knowledge of the harassment HART endured. Further, many of the acts of retaliation were directly undertaken by the managing agents of Defendant. Plaintiff is further informed and believes, and thereon alleges that this advance knowledge, or acts of oppression, fraud, or malice or act of ratification or authorization were on the part of the managing agents acting on behalf of the Defendant.

87. Plaintiff duly exhausted her administrative remedies with the DFEH. She obtained her DFEH Right-to-Sue Notice on April 27, 2015.

WHEREFORE, Plaintiff prays for relief as set forth below:

**THIRD CAUSE OF ACTION**
**Cal. Gov. Code § 12900, *et seq.***
**RACE DISCRIMINATION (DISPARATE TREATMENT)**
**(Alleged by Plaintiff against all Defendants)**

88. As a third, separate and distinct cause of action, Plaintiff complains of Defendant BART, and for a cause of action, alleges:

89. The factual allegations of Paragraphs 1 through 87 above, are re-alleged and incorporated herein by reference.

90. The California Fair Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12940(a)) provides that it is an unlawful employment practice for an employer, because of the race of any person to bar or to discharge the person from employment or from a training program

leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

91.     Plaintiff is a member of a class protected by FEHA: she is African-American.

92.     As demonstrated above, Plaintiff HART performed the duties of her job competently, and at the time she suffered the adverse employment action set forth above, was qualified and competent to perform the essential job functions of her position.

93.     Defendant BART, through its agents and employees, engaged in a pattern and practice of unlawful racial discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff HART, and the terms and conditions of her employment. Based on the information and belief, BART employees similarly situated to Plaintiff but not in her protected classes did not suffer the adverse employment action, as set forth above.

94.     At all relevant times, BART and its supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of discrimination against Plaintiff HART based upon her protected class.

95.     As a direct result of the acts and conduct of Defendant BART as alleged herein, Plaintiff HART has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

96.     As a direct and proximate result of the willful, knowing, and intentional discrimination against her, Plaintiff has suffered mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

97.     Defendant's acts alleged herein are malicious, oppressive, despicable, and/or in reckless disregard of Plaintiff's rights. As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

21

98.     Plaintiff duly exhausted her administrative remedies with the DFEH.  She obtained her DFEH Right-to-Sue Notice on April 27, 2015.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Cal. Gov. Code § 12900, *et seq.*
### GENDER DISCRIMINATION (DISPARATE TREATMENT)
### (Alleged by Plaintiff against all Defendants)

99.     As a fourth, separate and distinct cause of action, Plaintiff complains of Defendant BART, and for a cause of action, alleges:

100.    The factual allegations of Paragraphs 1 through 98 above, are re-alleged and incorporated herein by reference.

101.    FEHA (Cal. Gov. Code § 12940(a)) provides that it is an unlawful employment practice for an employer, because of the gender of any person to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

102.    Plaintiff is a member of a class protected by FEHA: she is female.

103.    As demonstrated above, Plaintiff HART performed the duties of her job competently, and at the time she suffered the adverse employment action set forth above, was qualified and competent to perform the essential job functions of her position.

104.    Defendant BART, through its agents and employees, engaged in a pattern and practice of unlawful racial discrimination in violation of FEHA in connection with its disparate treatment of Plaintiff HART, and the terms and conditions of her employment.  Based on information and belief, BART employees similarly situated to Plaintiff but not in her protected classes did not suffer the adverse employment action, as set forth above.

22

105.    At all relevant times, BART and its supervisors, agents, and/or officers, engaged in and/or ratified by their actions and/or inaction through their employees and/or supervisors, acts of discrimination against Plaintiff HART based upon her protected class.

106.    As a direct result of the acts and conduct of Defendant BART as alleged herein, Plaintiff HART has suffered a loss of earnings and related employment benefits in an amount to be proven at trial herein.

107.    As a direct and proximate result of the willful, knowing, and intentional discrimination against her, Plaintiff has suffered mental distress, anguish, and indignation. She is thereby entitled to general and compensatory damages in an amount to be proven at trial.

108.    Defendant's acts alleged herein are malicious, oppressive, despicable, and/or in reckless disregard of Plaintiff's rights. As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

109.    Plaintiff duly exhausted her administrative remedies with DFEH. She obtained her DFEH Right-to-Sue Notice on April 27, 2015.

WHEREFORE, Plaintiff prays for relief as follows:

## FIFTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF CAL. LAB. CODE § 1102.5(b)
(Alleged by Plaintiff against all Defendants)

110.    As a fifth, separate and distinct cause of action, Plaintiff complains of Defendant BART and DOES 1-10, and for a cause of action, alleges:

111.    The factual allegations of Paragraphs 1 through 109, above, are re-alleged and incorporated herein by reference.

112.    Jurisdiction is invoked pursuant to Section 1102.5 of the Labor Code of the State of California, which provides that, an employer may not retaliate against an employee for

23

disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

113. Plaintiff has been employed by Defendant BART since 2007.

114. From at least 2007 until the present, Ms. McElroy and DOES 1-10 acted, in various capacities, as duly appointed agents, representatives, and actors on behalf of BART.

115. In 2012, HART complained to her supervisor, Ms. McElroy, and to the Office of Civil Rights ("OCR") regarding working out of classification.

116. In or around January of 2012, HART complained to Ms. McElroy and the OCR after HART discovered that Ms. McElroy intended to have an unqualified BART employee administer the Police Officers Test. HART was the only employee in her department that could administer the test since she had taken and passes the California Commission on Peace Officers Standards and Training ("POST").

117. In 2013, HART complained to Ms. McElroy about a Customer Support Assistant position HART was recruiting because the applicant did not possess a California Drivers License.

118. As a result of Plaintiff's complaints, individuals within BART formed the belief that Plaintiff would continue to report violations of law and regulation to law enforcement authorities, and because of the her protected activities, HART was retaliated against and was subjected to a pattern of adverse employment actions, including having job duties taken away, being excessively scrutinized, working out of classification, and not being properly promoted, or compensated.

119. HART's disclosures were protected under the provisions of Cal. Lab. Code § 1102.5.

120. In so doing the acts and engaging in the activities alleged herein, Defendant BART, through its agent, Ms. McElroy, did intend to retaliate against HART for her exercise of rights

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

protected under California Labor Code § 1102.5 and caused HART to suffer severe emotional distress and loss of wages and other damages as set forth below.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE EQUAL PAY ACT 29 U.S.C. § 206
(Alleged by Plaintiff against all Defendants)

121.    As a sixth, separate and distinct cause of action, Plaintiff complains of Defendant BART, and for a cause of action, alleges:

122.    The factual allegations of Paragraphs 1 through 120 above, are re-alleged and incorporated herein by reference.

123.    Plaintiff is a female person and is therefore part of a protected class under the Equal Pay Act.

124.    Throughout the all relevant time periods from early 2015 to present, Plaintiff has been paid less than her similarly-situated male counterpart for the same work in the same location under the same job description and same job title, to wit, Mr. Mendoza is paid approximately three thousand dollars more per annum than Plaintiff.

125.    As set forth above, Plaintiff works in the PPA position, whose composite of skill, effort, responsibility, and working conditions are equivalent in value to the PPA position of her male counterpart, Mr. Mendoza.

126.    Defendant has no legitimate reason for the disparity in pay pursuant to any bona fide seniority system, any merit system, any system that measures earnings by quantity or quality of production, or any factor other than sex.

127.    By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

128.    As a further direct and legal result of the acts and conduct of defendants, and each of them set forth above, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff.

WHEREFORE, Plaintiff prays judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For an injunction prohibiting Defendant BART from engaging in the retaliatory and discriminatory conduct set forth above;

2. For damages including front pay, back pay, loss of benefits, and loss of earning capacity in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

3. For damages for emotional distress attendant to the discrimination and retaliation set forth herein, in amounts according to proof;

4. For attorneys' fees as provided by law;

5. For interest as provided by law;

6. For costs for suit herein;

7. For such other and further relief as the Court deems fair and just.

DATED: November 10, 2015                    SMITH PATTEN

SPENCER F. SMITH
DOW W. PATTEN
Attorney for Plaintiff
LYNETTE HART

## JURY DEMAND

Plaintiff demands trial by jury of all maters so triable.

DATED: November 10, 2015                    SMITH PATTEN

SPENCER F. SMITH
DOW W. PATTEN
Attorney for Plaintiff
LYNETTE HART

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT B

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BAY AREA RAPID TRANSIT; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LYNETTE HART

---

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED BY FAX**
ALAMEDA COUNTY
November 10, 2015
CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* Rene C. Davidson

1225 Fallon St., Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):*
**RG15792784**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

DATE: November 10, 2015      Clerk, by _Lynn Wiley_ , Deputy
*(Fecha)*        *(Secretario)* _____ *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Bay Area Rapid Transit

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☒ other *(specify):* CCP 415.95 (Business Organization, Form Unknown)
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov


# EXHIBIT B

# EXHIBIT C

IAN P. FELLERMAN (State Bar No. 119725)
WILEY PRICE & RADULOVICH, LLP
1301 Marina Village Parkway, Suite 310
Alameda, California 94501
Telephone: (510) 337-2810
Facsimile: (510) 337-2811

Attorneys for Defendant SAN FRANCISCO
BAY AREA RAPID TRANSIT DISTRICT

ENDORSED
FILED
ALAMEDA COUNTY

JAN - 4 2016

CLERK OF THE SUPERIOR COURT
By_____ M. Salcido

## SUPERIOR COURT OF STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| LYNETTE HART,<br><br>Plaintiff,<br><br>v.<br><br>BAY AREA RAPID TRANSIT; and DOES 1-10,<br><br>Defendants. | Case No.: RG15792784<br><br>*ASSIGNED FOR ALL PURPOSES TO JUDGE KIMBERLY COLWELL, DEPT. 18*<br><br>**ANSWER OF DEFENDANT TO UNVERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Defendant San Francisco Bay Area Rapid Transit District, erroneously sued herein as Bay Area Rapid Transit (hereafter "Defendant"), answers the allegations of Plaintiff's Complaint for Damages and Injunctive Relief (the "Complaint") as follows:

### GENERAL DENIAL

1. Pursuant to California Government Code Section 431.40, Defendant denies each and every allegation of Plaintiff's unverified Complaint and specifically denies that Plaintiff has been damaged.

### AFFIRMATIVE DEFENSES

As separate and independent affirmative defenses to each cause of action, Defendant alleges as follows:

1. Any adverse employment action was supported by legitimate nondiscriminatory reasons.

1

Wiley Price &
Radulovich, LLP

Answer of Defendant to Complaint for Damages                                        Case No. RG15792784

*Exhibit C*

2.    Plaintiff failed to mitigate her alleged damages.

3.    Plaintiff's exclusive remedy lies within the California Worker's Compensation Act, Labor Code section 3600, *et seq.*, and this Court lacks jurisdiction.

4.    Plaintiff's causes of action fail to state facts sufficient to state a cause of action against Defendant.

5.    Plaintiff's causes of action are barred entirely or partially by the applicable statute of limitations, including but not limited to California Government Code sections 12960(d) and 12965(b), Code of Civil Procedure sections 335.1, 338 and 340, and 29 U.S.C. sections 216(c) and 255(a).

6.    Plaintiff is estopped from recovering against Defendant.

7.    Plaintiff has waived her right to recover against Defendant.

8.    Plaintiff's causes of action are barred under the doctrine of unclean hands.

9.    The same actions would have been taken regardless of any alleged discriminatory or retaliatory motive, which motive is denied.

10.    Plaintiff's causes of action and remedies are barred entirely or partially by the after-acquired evidence doctrine.

11.    Plaintiff failed to timely and properly exhaust her administrative remedies with the Department of Fair Employment and Housing.

12.    Plaintiff failed to timely and properly exhaust her administrative remedies with Defendant and the California Labor Commissioner.

13.    Plaintiff's claims are barred partially or entirely by the avoidable consequences doctrine.

14.    Defendant has a policy prohibiting discrimination, harassment and retaliation that contains an effective complaint procedure, and Plaintiff failed to timely and properly utilize the relief available under the policy.

2

Wiley Price &
Radulovich, LLP

Answer of Defendant to Complaint for Damages                    Case No. RG15792784

15. Defendant did not have actual or constructive knowledge of any unlawful harassment, discrimination or retaliation, and Defendant did not ratify any allegedly unlawful conduct.

16. Defendant took reasonable care to prevent harassment, discrimination and retaliation, and Plaintiff unreasonably failed to timely and properly take advantage of the preventative and corrective opportunities provided.

17. Any differential between Plaintiff's pay and another employee's pay was not based on her gender, but was based on other factor(s).

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff take nothing by the Complaint;

2. That the Complaint be dismissed with prejudice, and that judgment be rendered in favor of Defendant;

3. That Defendant be awarded its reasonable attorneys' fees and costs in an amount to be determined by the Court; and

4. That Defendant have such other and further relief as the Court may deem just and proper.

Date: January ⁄⁄, 2016

WILEY PRICE & RADULOVICH, LLP

By: _____
IAN P. FELLERMAN

Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT

Wiley Price &
Radulovich, LLP

Answer of Defendant to Complaint for Damages

3

Case No. RG15792784

## PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Alameda, California, over the age of 18 years, and am not a party to the within-entitled action. My business address is 1301 Marina Village Parkway, Suite 310, Alameda, California 94501. On the date set forth below, I served the following document(s) by the method indicated below:

### ANSWER OF DEFENDANT TO UNVERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

☐ **Facsimile** by transmitting via facsimile on this date from fax number (510) 337-2811 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing pursuant to California Code of Civil Procedure §1013(e). The transmitting fax machine complies with California Code of Civil Procedure §1013(e).

☒ **First Class Mail** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Alameda, California addressed as set forth below pursuant to California Code of Civil Procedure §1013(a). I am readily familiar with the business practice at Wiley Price & Radulovich, LLP for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

☐ **Messenger** by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below.

☐ **Personal Delivery** by personally hand delivering the document(s) listed above in a sealed envelope(s) to the person(s) at the address(es) set forth below pursuant to California Code of Civil Procedure §1011.

☐ **Overnight Delivery** by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express service carrier for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below pursuant to California Code of Civil Procedure §1013(c).

Spencer F. Smith
Dow Patten
SMITH PATTEN
221 Main Street, Suite 740
San Francisco, CA 94105
Telephone: 415-402-0084
Fax: 415-520-0104

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 4, 2016 at Alameda, California.

_____
Julie M. Hokanson

4

Proof of Service                                                                 Case No. RG15771489

Wiley Price &
Radulovich, LLP

**PROOF OF SERVICE**

I am a citizen of the United States, employed in the County of Alameda, California, over the age of 18 years, and am not a party to the within-entitled action. My business address is 1301 Marina Village Parkway, Suite 310, Alameda, California 94501. On the date set forth below, I served the following document(s) by the method indicated below:

1. **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION); and**

2. **CIVIL COVER SHEET (FORM JS 44).**

☐ **Facsimile** by transmitting via facsimile on this date from fax number (510) 337-2811 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing pursuant to California Code of Civil Procedure §1013(e). The transmitting fax machine complies with California Code of Civil Procedure §1013(e).

☒ **First Class Mail** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Alameda, California addressed as set forth below pursuant to California Code of Civil Procedure §1013(a). I am readily familiar with the business practice at Wiley Price & Radulovich, LLP for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

☐ **Messenger** by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below.

☐ **Personal Delivery** by personally hand delivering the document(s) listed above in a sealed envelope(s) to the person(s) at the address(es) set forth below pursuant to California Code of Civil Procedure §1011.

☐ **Overnight Delivery** by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express service carrier for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below pursuant to California Code of Civil Procedure §1013(c).

Spencer F. Smith
Dow W. Patten
SMITH PATTEN
221 Main Street, Suite 740
San Francisco, CA 94105
Telephone: (415) 402-0084
Fax: (415) 520-0104

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on January 5, 2016 at Alameda, California.

_____
Julie M. Hokanson

Wiley Price & Radulovich, LLP

Proof of Service

Case No. _____